UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| TREMAYNE B. BESTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:08-CV-156-TS |
| | ) | |
| JAMES MEEHAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Tremayne B. Bester, a *pro se* prisoner, submitted a complaint under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 1915A, the Court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted. Courts apply the same standard under § 1915A as when addressing a motion under Rule 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006).

> In order to state a cause of action under 42 U.S.C. § 1983, . . . the plaintiff must allege that some person has deprived him of a federal right [and] . . . he must allege that the person who has deprived him of the right acted under color of state law. These elements may be put forth in a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). In reviewing the complaint on a motion to dismiss, no more is required from plaintiff's allegations of intent than what would satisfy Rule 8's notice pleading minimum and Rule 9(b)'s requirement that motive and intent be pleaded generally.

*Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (citations, quotation marks, brackets, and ellipses omitted).

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the

> defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65 (2007) (quotation marks, ellipsis, citations, brackets, and footnote omitted).

> While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant set out *in detail* the facts upon which he bases his claim, Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

*Id.* at n.3 (quotation marks and citation omitted). Furthermore, "on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1965 (quotation marks omitted). Nevertheless,

> A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. *Cf.* Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice").

*Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quotation marks and citations omitted).

Bester alleges that he was denied due process of law by the members of the Indiana State Prison disciplinary hearing board (DHB) who sanctioned him with one year in disciplinary segregation at a different facility, Westville Correctional Facility. He brings the same claim against two others at the Indiana State Prison who reviewed his appeal from that decision. Bester does not allege that the duration of his confinement was extended by the DHB. As a result, he was not entitled to receive due process unless his placement in disciplinary segregation "imposes

2

atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). This is because "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." *Id.* at 485. Bester understands this because he argues that, "[t]he conditions of disciplinary segregation in comparison to general population and administrative segregation at the Indiana State Prison are significantly different." (Complaint ¶ 5, DE 1 at 6.)

First, it is important to distinguish discretionary segregation (which is not involved in this case) and disciplinary segregation (which is at issue in this case).

> To that end, we have concluded that inmates have no liberty interest in avoiding transfer to discretionary segregation—that is, segregation imposed for administrative, protective, or investigative purposes. Indeed, there is nothing "atypical" about discretionary segregation; discretionary segregation is instead an "ordinary incident of prison life" that inmates should expect to experience during their time in prison.

*Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (citations omitted). Disciplinary segregation is different. Depending on the duration of the placement and its effect on an inmate's release date, placement in disciplinary segregation may trigger a due process requirement prior to transfer.

> [T]he Supreme Court determined in *Wilkinson v. Austin*, 545 U.S. 209 (2005), that there can, in fact, be a liberty interest—short of an Eighth Amendment violation—triggering procedural requirements. The Court required the State of Ohio to provide limited due process protections before inmates could be transferred to its most restrictive prison. The Court noted the difficulty in identifying the proper baseline against which to measure conditions but said that assignment to the prison imposes an atypical and significant hardship under any plausible baseline. *Wilkinson* turns, however, not on denial of basic life necessities so much as on the extension of incarceration. The determining factors were that placement at the prison is of indefinite duration and it disqualifies an otherwise eligible inmate from consideration for parole. *Wilkinson* does not answer the question as to when the denial of life's necessities alone could give rise to a liberty interest but still fall short of violating the Eighth Amendment.

3

> There is, as we said in *Wagner* [*v. Hanks*, 128 F.3d 1173, 1177 (7th Cir. 1997)], a "small space" between the two.

*Gillis v. Litscher*, 468 F.3d 488, 492 (7th Cir. 2006) (quotations, pincite citations, and parallel citations omitted). Therefore, in a disciplinary segregation case, such as this one, there are two questions: is the placement indefinite or does it somehow extend the duration of confinement, and do the conditions in disciplinary segregation fall in that "small space" between having a liberty interest and otherwise violating the Eighth Amendment?

Here, Bester was sent to disciplinary segregation for one year. That means his placement there is not indefinite. He does not allege, and, based on this complaint it would not be reasonable to infer, that his release date is in any way extended because of his placement in disciplinary segregation. Because he meets neither of these two conditions, under *Wilkinson* he is not entitled to due process prior to his placement there. Furthermore, the conditions of his disciplinary segregation are no more harsh than those which in *Wilkinson* were insufficient on their own to warrant finding a liberty interest. Bester states,

> I was confined to my cell twenty-three hours five (5) days out of the week and twenty-four hours two (2) of the seven (7) days, and a majority of the time I didn't get that due to shortage of staff on the unit. There is no outside recreation (i.e. no fresh air or sunlight), and no contact visitation.

(Complaint ¶ 5, DE 1 at 6.) In *Wilkinson*, the court described the conditions in that case.

> In the OSP almost every aspect of an inmate's life is controlled and monitored. Inmates must remain in their cells, which measure 7 by 14 feet, for 23 hours per day. A light remains on in the cell at all times, though it is sometimes dimmed, and an inmate who attempts to shield the light to sleep is subject to further discipline. During the one hour per day that an inmate may leave his cell, access is limited to one of two indoor recreation cells.
> 
> Incarceration at OSP is synonymous with extreme isolation. In contrast to any other Ohio prison, including any segregation unit, OSP cells have solid metal doors with metal strips along their sides and bottoms which prevent conversation or communication with other inmates. All meals are taken alone in the inmate's

> cell instead of in a common eating area. Opportunities for visitation are rare and in all events are conducted through glass walls. It is fair to say OSP inmates are deprived of almost any environmental or sensory stimuli and of almost all human contact.

*Wilkinson v. Austin*, 545 U.S. 209, 214 (2005). Additionally, as harsh as those conditions were, other harsh conditions are described in *Lekas v. Briley*, 405 F.3d 602 (7th Cir. 2005), and the cases reviewed by it which also "were not so atypical and significant as to constitute a deprivation of a liberty interest." *Id.* at 610. For example, *Lekas* discusses *Thomas v. Ramos*, 71 F.3d 1246 (7th Cir. 1997), which involved 24-hour-a-day segregation for 70 days in a locked cell, little contact with any other people, complete denial of exercise privileges, and the loss of all commissary privileges. *Lekas*, 405 F.3d at 610–11. Here, Bester must have had some contact with other inmates because he obtained an affidavit from one of them (DE 1-1). The conditions of the disciplinary segregation unit where Bester is confined are harsh, but based on his description of them, they are "not so atypical and significant as to constitute a deprivation of a liberty interest." *Lekas*, 405 F.3d at 610. Therefore, Bester was not entitled to due process prior to his placement in disciplinary segregation for one year, and it is irrelevant whether there were errors during the due process hearing that he was afforded.

Bester also states that, at the Westville Correctional Facility, where he is being housed as a result of the Indiana State Prison DHB decision, he

> is being confined on a unit with psychotic prisoners, making extremely loud noises all day long, everyday, the throwing of feces and urine everyday causing noxious odors, and most traumatizing was having feces and urine thrown on myself while locked in my cell, by these mentally ill inmates.

(Complaint ¶ 5, DE 1 at 7.) Such conditions are extreme but they are not part of the punishment imposed by an assignment to disciplinary segregation. *Gillis* and other cases demonstrate that

5

atypical and significant hardships are those inherent in the rules of the facility. In *Gillis*, the alleged Eighth Amendment violations, which constituted a basis for the due process claim, were a result of the rules of the disciplinary segregation unit. There, inmates were "[s]tripped naked in a small cell with nothing except a toilet; forced to sleep on a concrete floor slab; denied any human contact; fed nothing but 'nutri-loaf'; and given just a modicum of toilet paper–four squares–only a few times. *Gillis*, 468 F.3d at 489. Here, when the DHB ordered that Bester be sent to disciplinary segregation, it inherently restricted his exercise, visitation, personal property, recreation, and commissary. This is because the rules in the disciplinary segregation unit place such limitations on the inmates housed there. But the DHB did not sentence Bester to be attacked by other inmates, nor do the rules of the disciplinary segregation unit mandate that he be assaulted with human waste. Therefore, though such conditions and events may be part of an Eighth Amendment claim for failure to protect, they are not the basis of a liberty interest giving rise to a right to due process.

Unlike the plaintiff in *Gillis*, Bester has not presented a separate Eighth Amendment claim in his complaint, and it does not appear that he understood that such a claim might exist or that he could assert it. Neither is it entirely clear from this complaint that such a claim would have merit. Furthermore, because a due process violation at the Indiana State Prison is unrelated to a failure to protect claim for an incident that took place at the Westville Correctional Facility, a separate facility, such an unrelated claim could not have been included in this complaint in light of *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (stating that in this Prison Litigation Reform Act case that "[u]nrelated claims against different defendants belong in different suits"). Nevertheless, because he may have a failure to protect claim and because he may wish to bring it

6

against defendants at the Westville Correctional Facility whom he believes condoned the attack(s) or who were deliberately indifferent to his safety, he will be provided with a blank Prisoner Complaint 42 U.S.C. § 1983 packet so that he may decide how he wishes to proceed.

For the foregoing reasons, the Court:

(1) **DISMISSES** this case pursuant to 28 U.S.C. § 1915A; and

(2) **DIRECTS** the clerk to send Tremayne B. Bester a blank Prisoner Complaint 42 U.S.C. § 1983 packet.

SO ORDERED on June 1, 2008.

   s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION

7